CAIN v. CAIN.

1. DIVORCE—DIVISION OF PROPERTY—MODIFICATION OF DECREE.
   Decree of divorce ordering sale of $12,000 home, then subject to $4,500 mortgage, equal division of balance and $8 to $10 per week for support of 10-year-old daughter until she should reach age 17 is modified so as to award house to plaintiff wife subject to payment of $500 to defendant within one year and termination of support money to child subject to future order of the court, thereby leaving plaintiff in occupancy of house and relieving defendant, a poor provider, of support of child.

2. SAME—MODIFICATION OF DECREE—COSTS.
   No costs of appeal are allowed in suit for divorce where decree is modified since neither party has fully prevailed.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted January 14, 1947. (Docket No. 76, Calendar No. 43,544.) Decided May 16, 1947. Rehearing denied June 27, 1947.

Bill by Ruby O. Cain against George L. Cain for divorce on ground of extreme and repeated cruelty. Decree for plaintiff. Plaintiff appeals. Modified and affirmed.

*Daniel P..Cassidy,* for plaintiff.

*Harry N. Grossman,* for defendant.

REID, J. The parties to this divorce action were married May 9, 1936. and separated December 21, 1944; one daughter, Georgiana, was born May 26, 1937. Plaintiff claimed extreme cruelty as the ground for her divorce. Defendant withdrew his answer and cross bill, contested plaintiff's claims as to property settlement only, and did not contest the granting of a divorce or granting of custody of the daughter to plaintiff. The trial court granted plaintiff a decree of divorce and custody of the daughter, and in the property settlement awarded plaintiff the household furniture and furnishings and awarded defendant the 1941 Nash automobile. The decree further ordered that the residence of the parties at 18466 Coyle avenue, Detroit, be sold to a specified purchaser for $12,000, and that after the payment of the mortgage, which seems to have amounted to about $4,500 at the time of the hearing, and the commission fee for sale, $600, the balance of the sale price of $12,000 be divided equally between the two parties. The decree further ordered defendant to pay $8 per week while not in full employment for the support of the daughter until she arrived at the age of 17, or $10 per week if he again became actively and profitably engaged in his business. Plaintiff appeals from the portion of the decree as to property settlement. We hear the case *de novo.*

Plaintiff claims and offered convincing testimony to show that on numerous occasions defendant without provacation became enraged at plaintiff, called her vile names, on several occasions struck, choked and beat plaintiff, and that on three occasions defendant threatened to kill her. The last occasion, which caused the final separation, was on December 21, 1944, when the defendant was home on a furlough, plaintiff's testimony in that regard being as follows:

"*A.* He wanted me to discuss a matter in the bathroom; because I wanted to go out in the living room and discuss it, he became enraged and started hitting me and choking me. He struck me here (indicating) and cut a place over my eye; then he threw me to the floor and said I better say my prayers because he was going to cut my throat. At that my housekeeper started to call the police and he turned me loose and went over to her and I got out of the house and went next door and my neighbor called the police.

"*Q.* What happened?

"*A.* The police came and took him down to the station and I went down there and the police told me it was up to me what I wanted to do with him. So his brother came down there so they turned him over to his brother and the police told his brother he would be responsible for him, for Mr. Cain's actions.

"*Q.* Mr. Cain did not want to be arrested?

"*A.* No, he didn't and I didn't want to have him placed in jail over night."

This testimony was corroborated by the housekeeper, Nettie M. Hull.

We are convinced that the plaintiff correctly computed the amount of the defendant's contributions to the family upkeep from the time of the marriage until September 30, 1945, as follows:

May 9, 1936 to end of that year..about $ 1,347.00
Year 1937 ....................about    1,700.00
  "    1938 ....................about      500.00
  "    1939 .........................∴..  2,015.82
  "    1940 ...........................  1,290.72
  "    1941 ...........................  2,349.28
  "    1942 ...........................  2,623.63
  "    1943 allotment of $100.00 per mo.  1,200.00
  "    1944 allotment of $100.00 per mo.  1,200.00
  "    1945   to   9–30–45  allotment  of
             $100.00  for  2  months and
             $80.00   per   month  for  7
             months ....................    760.00
                                        —————————
                                        $14,986.45

The trial court by including part of the year in which the parties were married preceding the marriage and including pay to defendant while in the service exceeding the allotment, and other items not included in the above statement, fixed defendant's earnings at $23,997. Defendant claims that at the time of his marriage there was due him, as commissions on sales of real estate, $1,200 to $1,500, which commissions he collected and turned in to the family living expenses within a few months after the marriage, which claim of defendant is denied by plaintiff.

Defendant's earnings being insufficient to support his household, plaintiff continued her work at the Fisher Body plant in Pontiac until the last of December, 1936, when her pregnancy compelled her to quit work. The daughter was born May 26, 1937. In August, 1937, plaintiff again went to work. Her earnings have been as follows:

May 9, 1936 to December 31, 1936 at
                 $120.00 per month...... $    920.00
Year 1937 ...........................         432.00
  "    1938 ...........................      1,415.00

Year 1939 ........................ $ 1,500.00
  "    1940 ........................  1,545.00
  "    1941 ........................  1,930.00
  "    1942 ........................  1,936.69
  "    1943 ........................  2,280.00
  "    1944 ........................  2,864.45
  "    1945 to August 31, 1945........  2,225.00
                                      _____
                                      $17,048.14

Plaintiff submitted a detailed account of her expenses for the same period which may be summarized as follows:

For household help.................. $5,107.00
For lunches and transportation......  1,272.00
Other expenses by reason of employment ............................   350.00
Income tax..........................   995.48
                                      _____
                                      $7,724.48

The net difference is $9,323.66.

It will be seen that the support given by defendant was insufficient during at least the first five years of the married life of the parties. While defendant criticized plaintiff for working out and claimed that he desired she should not work out, yet the conclusion is inevitable from all the testimony that it was a case of necessity for her to resume her employment. Defendant joined the Coast Guard October 26, 1942. He served outside of continental United States about 20½ months, and has been honorably discharged. Plaintiff was still working at the time of the hearing and there is no intimation that she has ceased her employment.

The lot on which is situated the house which the plaintiff still occupies was bought in 1939. The cost of the lot and of the house that was built thereon was $5,400, all of which was furnished by the Fed-

eral Housing Administration. The parties moved in on July 8, 1939, and afterwards made improvements costing about $500. 'The mortgage at the time of hearing was reduced to about $4,500, but the parties had paid in (apparently including interest) $3,556.43 on the cost of the house and lot.

Defendant made a motion for allowance against plaintiff for use and occupancy of the house and real estate, which motion was denied by the trial court. It appears from the sworn answer of plaintiff to the motion for allowance that from October, 1945 to April 5, 1946, defendant contributed only $50 toward the child's support and that the child sustained a severe accident, December 31, 1945, entailing a total of $110 for hospital bill, ambulance charge and doctor's bill. The answer also states that within a few days after the entry of the decree of divorce defendant went to Florida and was there married and has since paid but little attention to his child. He was a poor provider before entering the United States service and after his discharge is still a poor provider.

The continued use of the house is of very great importance to plaintiff and her daughter. The daughter's interests will be better protected by the title to the residence being placed in her mother than by a decree ordering her father to pay $8 per week alimony for the daughter's support, since we entertain grave doubts of defendant's future compliance with any requirement to support his daughter.

If the house were sold and the incidental expenses were paid, the balance for division between the parties would be about $7,000, and under the terms of the decree appealed from plaintiff would receive about $3,500. For this amount she could not buy a suitable residence and it is to be feared that if she should buy a suitable residence and go in debt

for an additional sum to buy it, she might lose her entire interest therein by reason of possible future decline in values of real estate. The trial judge realized this situation and after a prima facie showing had been made as to plaintiff's case and an outline of the financial situation presented to him in statements and testimony, he announced as follows:

"I cannot put a woman and child out of their house without knowing they have some place to go. Of course, it is a matter of common knowledge that there is a shortage of suitable homes in Detroit. We all know from reading the newspapers that war veterans, as well as other people, find it difficult, in fact, almost impossible, to find suitable places to live, and I think that is one of the issues in this case, much as I would like to accommodate the defendant, have him realize something on his investment, on the other hand, I cannot arbitrarily say, 'Sell this house for $12,000 and put Mrs. Cain and her daughter out on the street.' I have got to know where they are going."

Subsequent thereto a considerable amount of testimony was taken which does not greatly alter the situation that had been before the court when he made the above pronouncement. At the conclusion of the taking of testimony, including the interrogation of plaintiff by the court, it developed that the parties had practically agreed upon plaintiff paying defendant $2,500 and keeping the house, it being contemplated that she be awarded the house. It appeared that plaintiff was not then able to borrow the sum of $2,500, whereupon the court made a decree as heretofore recited.

The necessity for plaintiff and her daughter to be left undisturbed in the occupancy of the house is so great that we feel compelled to make an award for plaintiff different from that ordered by the decree

of the trial court. The house and lot is awarded to the plaintiff as her sole property on condition that at any time within one year from the date of the entry of decree in this Court she pay to the defendant $500, with interest at five per cent. per annum from date of our decree, defendant to have a lien on the premises for the sum of $500. When plaintiff makes payment of the $500, the title to the real estate shall vest in her absolutely. The payments of alimony for support of the child are hereby terminated, subject to any future order of the court.

In making the above award, we consider that it must be a matter of considerable financial value to defendant to be relieved entirely of the future support of his wife. The father's liability for the daughter's reasonable support in case of the failure of the mother to provide such reasonable support is a matter from which the court does not exonerate the defendant. Except for the modifications hereinbefore set forth, the decree appealed from is affirmed. A decree may be entered in this Court in accordance with this opinion. Neither party having fully prevailed, no costs of this appeal are allowed.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, NORTH, and DETHMERS, JJ., concurred.